**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| HARVARD STEEL SALES LTD.<br>5400 Harvard Ave<br>Cleveland, OH  44105 | )  CASE NO. 2:23-cv-00406<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )  **COMPLAINT FOR DAMAGES**<br>)  **AND OTHER RELIEF**<br>) |
| COIL PROCESSORS, LLC d/b/a<br>ANDES COIL PROCESSORS,<br>201 Mississippi St.<br>Gary, IN 46402 | )<br>)<br>)<br>)<br>) |
| Defendant. | |

Plaintiff Harvard Steel Sales Ltd. ("Harvard"), through its undersigned counsel, files this Complaint for Damages and Other Relief against Defendant Coil Processors LLC d/b/a Andes Coil Processors ("Andes") (collectively, Harvard and Andes are the "Parties"), and in support of its Complaint Harvard alleges and states as follows:

**INTRODUCTION**

1. This is an action for breach of contract arising from Andes' failure to properly store, process, and handle prime quality or excess prime quality steel coils as required by law and as the Parties agreed.

2. From 2016 through 2023, Andes made binding commitments to Harvard to securely store, process, and/or handle multiple shipments of prime quality and excess prime quality steel coils purchased by Harvard and entrusted to Andes.

3. Harvard delivered certain steel coils identified as the "Steel Coils" in the documentation (described herein below) exchanged between the Parties, including bills of lading,

other transactional documents, and confirmatory emails to Andes' temperature and humidity-controlled facility in Gary, Indiana, and Harvard paid all storage, processing, and handling fees charged by Andes as the Parties agreed.

4. The Steel Coils entrusted to Andes are defined as the "Materials" in the "Bailee Agreement" dated June 9, 2016, entered into by and among Harvard, Andes, and First Merit Bank, N.A. (the lender to Harvard).[1]

5. A copy of the Bailee Agreement is attached as <u>Exhibit A</u> to this Complaint.

6. The Parties' agreement for the storage, processing, and handling of the Steel Coils was reflected in their Transactional Documents (defined herein below and examples attached as <u>Exhibit B</u>), their course of dealing, and well-established industry standards for flat-rolled carbon steel.

7. In addition, under the Bailee Agreement at paragraph 4(a)(ii), Harvard has and may exercise all rights of a bailor under the Uniform Commercial Code in the state where the Materials are located (Indiana) or the laws applicable to the Bailee Agreement (Ohio).

8. The provisions of the Uniform Commercial Code in Indiana (Ind. Code § 26-1-7-204(a))[2] and in Ohio (Ohio Rev. Code § 1307.204 (A))[3] similarly make Andes liable for damages

---

[1] Any reference to the "Steel Coils" shall also mean the "Materials" and vice versa.

[2] Ind. Code § 26-1-7-204(a) states in pertinent part: "A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. Unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care."

[3] Ohio Rev. Code § 1307-204(A) also states in pertinent part: "A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. Unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care."

for loss or injury to the Materials caused by Andes' failure to exercise ordinary care with regard to the Materials entrusted to it.

9.    Beginning in about 2022, Andes improperly stored, processed, and handled the Materials, exposing Harvard's Steel Coils to excess humidity and unnecessary and/or careless transport or movement within Andes's facility resulting in physical damage and loss of value to the Steel Coils.

10.    The actions of Andes with respect to the Materials were in material breach of the Parties' agreements, their course of dealing, the Uniform Commercial Code (as enacted in Ohio and Indiana), and well-established industry standards for flat-rolled carbon steel.

11.    As a direct result of Andes' material breaches, many of the over seven hundred Steel Coils entrusted to Andes by Harvard have been damages, devalued, or rendered unmarketable (the "Damaged Coils") and one of the coils entrusted to Andes by Harvard, weighing about 59,360 pounds, was reportedly lost by Andes (the "Lost Coil").

12.    As a result of Andes' actions and material breaches, Harvard (a) lost the value of steel it had purchased to sell to customers, (b) had to utilize higher cost steel to meet customer orders, (c) was unable to meet certain customers' needs resulting in lost business and lost profits, and (d) incurred additional storage, processing, handling, inspection, scrap, and freight charges as a direct consequence of Andes' damage and loss of Steel Coils Harvard entrusted to Andes and placed in Andes' custody and control.

13.    Harvard made timely demand and gave notice of its claim for the Damaged and Lost Coils and its damages to Andes, including Harvard's most recent demand letter sent on October 24, 2023.

14. Instead of reimbursing Harvard for the losses and excess costs Andes caused, Andes charged Harvard additional storage, processing, and handling fees for the Steel Coils, including the Damaged Coils, and continued to charge Harvard for storage of the Lost Coil after its reported loss by Andes.

15. Harvard now brings this action to recover the direct damages caused by Andes' failures to securely store, process, and handle the Materials, the excess fees charged by Andes because of the damages it caused, together with the foreseeable incidental and consequential damages resulting from Andes' breach of the Parties' agreements and course of dealing as well as violations of applicable laws and industry standards. To date, Harvard has incurred losses caused by Andes in excess of $1,577,531 and anticipates losses to continue to increase and may exceed two million dollars ($2,000,000.00) once all the Steel Coils, including the Damaged Coils, have been finally sold and/or scrapped.

## THE PARTIES

16. Harvard is an Ohio limited liability company with its principal place of business at 5400 Harvard Avenue, Cleveland, Ohio 44105, and its members are all located or reside in Ohio.

17. Harvard is in the business of distributing and processing prime and excess prime quality steel.

18. Andes is a Delaware limited liability company with a principal place of business at 201 Mississippi Street, Gary, Indiana 46402. On information and belief, all Andes' members are located or reside in Indiana and Texas.

19. Andes is in the business of storing, processing, and handling flat-rolled carbon steel.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the members of Harvard and Andes, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

21. This Court has personal jurisdiction over this action because Andes is located in and conducts business in Indiana.

22. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Harvard's claims occurred within this judicial district.

## ANDES' LIABILITY UNDER THE PARTIES' AGREEMENT, COURSE OF DEALING, INDUSTRY STANDARDS, AND THE UNIFORM COMMERCIAL CODE

23. In mid-2016, Andes and Harvard entered into negotiations for storage, processing, and handling of Harvard Steel Coils in Andes's temperature and humidity-controlled storage facility in Gary, Indiana.

24. Harvard's Steel Coils consisted of a combination of cold-rolled, galvanized, aluminized, hot-rolled, hot-rolled pickled and oiled (HRPO), and galvannealed prime quality and excess prime quality steel (often collectively referred to as "flat-rolled carbon steel").

25. Flat-rolled carbon steel must be stored in temperature and humidity-controlled environments.  This is necessary to avoid condensation of moisture on the steel from shifts in relative humidity which lead to corrosion and rust.

26. Corrosion and rust of flat-rolled carbon steel lowers its value and can render it unmarketable for many intended applications.

27. The Parties negotiated the terms and pricing for storage, processing, and handing Harvard's Steel Coils with full knowledge of the type of steel that was to be entrusted to Andes

and the temperature and humidity-controlled environment necessary for secure storage, processing, and handling at Andes' facility.

28. The Parties entered into a Bailee Agreement with First Merit Bank, N.A., the lender that financed Harvard's purchase of steel from steel producing mills in Indiana, Pennsylvania, and West Virginia. *See* Exhibit A.

29. The Parties' agreement for handling the Steel Coils was further memorialized in (a) bills of lading from the transportation companies or carriers evidencing what was being shipped from the steel producing mills; (b) documents from Andes evidencing what Andes received from the carriers: (c) purchase orders or similar documents issued by Harvard providing the specifications for processing and handling, as well as instructions for shipping the Steel Coils; (d) confirmatory emails exchanged between the Parties; and (e) invoices or similar documents issued by Andes to Harvard for storage, processing, and handing of Harvard's Steel Coils. Collectively, these "Transactional Documents" together with the Bailee Agreement memorialized the Parties' course of dealing and agreement for storage, processing, and handling of the Steel Coils (collectively their "Agreement").

30. Andes has copies of the voluminous Transactional Documents and emails exchanged between the Parties reflecting and memorializing their Agreement. Harvard Steel will provide by way of example, and not in limitation of its claims, copies of some of the Transactional Documents exchanged between Harvard and Andes are attached as Exhibit B to this Complaint.

31. To meet orders from Harvard's customers, Harvard purchased flat-rolled carbon steel primarily from steel producing mills in Indiana, Pennsylvania, and West Virginia, and after agreeing to pricing and other terms with Andes shipped the Steel Coils to Andes at its Gary, Indiana facility for storage as specified by Harvard.

32. Upon receipt by Andes, Harvard's Steel Coils were stored, processed, and/or handled as specified by Harvard and were often shipped directly from Andes to Harvard's customers to fill existing orders.

33. For many years, the business relationship between Harvard and Andes worked as intended and agreed, benefiting both Parties. Harvard was able to meet its customers' needs for steel products and Andes was paid hundreds of thousands of dollars for storage in the temperature and humidity-controlled environments within Andes's facility, as well as for processing and handling Harvard Steel Coils as specified to meet customer orders.

34. From 2020 through 2023, Harvard paid Andes over $764,746.54 in fees for its services.

35. In mid-2022, however, Harvard began receiving rejections and claims from its customers of the Steel Coils stored, processed, and handled by Andes. The rejections and claims from Harvard's customers were based on the corrosion and rust of Steel Coils stored, processed, or handled by Andes.

36. After Harvard began to investigate to determine the source of the corrosion and rust, current and former representatives of Andes admitted to Harvard that there had been an event sometime in May or June of 2022 when Andes failed to control the temperature and humidity in at least one of the warehouses at its facility in Gary, Indiana (the "Corrosion Event").

37. The Corrosion Event led to an accumulation of moisture on Harvard's Steel Coils, which penetrated the steel and caused corrosion and rust of the Steel Coils while on site at Andes' facility at the time of the Corrosion Event.

38. On September 14, 2022, and October 13, 2022, representatives from Harvard toured Andes's warehouses in Gary, Indiana, in efforts to determine the scope of the damage to its Steel Coils due to the Corrosion Event.

39. Harvard's representatives discovered and documented (a) widespread corrosion and rust on many of Harvard's Steel Coils on site at Andes' facility; (b) damaged, torn, and removed shrink and paper wraps used by the manufacturing mills to protect Harvard's Steel Coils; and (c) physical dents on the edges of many of Harvard's Steel Coils entrusted to Andes, suggesting that Andes had further mishandled the Steel Coils by bumping or banging them into other materials, equipment, or structures within the Andes' facility.

40. Harvard's representatives also discovered and documented additional damages to certain Steel Coils shipped from Andes to Harvard customers.

41. Andes was unable to produce any evidence to show that at the time they arrived at the Andes facility any of Harvard's Steel Coils had corrosion or rust, torn wrappings, or other physical damage.

42. At the time of Harvard's visits to Andes' facility, Andes' principal, Frank Eberwein, and Andes' manager, Lori Melvin, confirmed that the Corrosion Event had occurred at Andes' facility and admitted that Andes had no formal process to monitor temperature or humidity in its facility. Mr. Eberwein further disclosed that Andes had lost a long-time facilities' manager shortly before the Corrosion Event.

43. During the visit to Andes' facility by Harvard representatives on September 14, 2022, Mr. Eberwein committed to finding pragmatic business solutions to mitigate the damages caused by Andes' failure to control the temperature and humidity during the Corrosion Event and promised to compensate Harvard for its losses.

44. Between the two visits to the Andes facility, on about September 30, 2022, Andes' representatives also disclosed that they had mishandled and ultimately lost a 59,360-pound steel coil belonging to Harvard and promised to compensate for Harvard for the losses related to this coil (the "Lost Coil").

45. Despite Harvard's repeated good faith efforts to work with Andes, and after Andes' initial admissions and commitment to Harvard, Andes was unwilling to cooperate to mitigate the damages caused by Andes or to reimburse Harvard for the losses caused by Andes failures as promised.

46. After Harvard's visits to Andes' facility, representatives of Andes refused to provide accurate information about the condition of Harvard 's Steel Coils which remained in Andes' facility and stopped responding to Harvard's emails and phone calls.

47. Andes even refused to disclose the storage locations of Harvard Steel Coils at the time of the Corrosion Event, preventing Harvard from determining precisely which of its coils had likely been exposed to excess humidity by Andes, further delaying Harvard's sale of its undamaged Steel Coils and causing additional damages.

48. Andes also failed to cooperate in timely inspecting or processing the remaining Steel Coils for delivery to Harvard's customers.

49. To add insult to injury, Andes began charging Harvard for additional storage, processing, and handling fees made necessary solely as a result of the Corrosion Event and mishandling of Harvard Steel Coils.

50. In the ordinary course of its business and following past business practices, and absent the Corrosion Event, Harvard would have sold all the Steel Coils stored at Andes' facility by about the end of 2022.  As a direct result of the Corrosion Event and Andes' subsequent failure

to cooperate, however, more than half of the Harvard Steel Coils that were on site at Andes during the Corrosion Event remains unsold, and Harvard continues to incur additional costs solely as a result of Andes' actions.

51. In efforts to avoid its own culpability and responsibility to Harvard for the damages Andes caused due to the Corrosion Event and its mishandling of Harvard Steel Coils, Andes has since resorted to pointing to Harvard's mitigation efforts with the manufacturing mills to replace some of the Damaged Coils as purported evidence that Andes did not cause the damages incurred by Harvard.

52. To date, however, Andes has failed to provide any evidence that any of Harvard Steel Coils on site during the Corrosion Event were damaged before arriving at or after leaving Andes's facility in Gary, Indiana. The damage to the Harvard Steel Coils occurred at the Andes' facility and was caused by Andes.

53. At the time of the Corrosion Event at Andes, Harvard had identical or nearly identical steel coils stored, processed, and handled in its facility in Cleveland, Ohio ("Comparable Steel Coils"). Like Harvard Steel Coils entrusted to Andes before the Corrosion Event, the Comparable Steel Coils stored by Harvard in Cleveland, Ohio were manufactured by the same steel producing mills in Indiana, Pennsylvania, and West Virginia during the same time period; shipped by the same transportation carriers (both from the steel producing mills and to Harvard's customers after storage, processing, and handling); and sold to Harvard customers for the same or similar uses and applications.

54. Yet, unlike the Steel Coils stored, processed, and handled by Andes, the Comparable Steel Coils contained no corrosion or rust, and Harvard received no rejections or claims for corrosion or rust from Harvard's customers for the Comparable Steel Coils.

## HARVARD'S DAMAGES AS A RESULT OF ANDES'S BREACH

55. Despite repeated requests, Andes has failed to reimburse Harvard for any of the damages resulting from Andes material breaches and failure to exercise reasonable care described above, including material costs, lost profits, and third-party service fees incurred solely as a result of Andes's improper storage and handling of the Steel Coils stored in the Andes facility in Gary, Indiana.

56. Despite repeated requests, Andes has also failed to replace or fully reimburse Harvard for its losses surrounding the Lost Coil, including material costs, profit loss, and additional losses incurred to replace the Lost Coil to cover Harvard's existing obligation to its customer.

57. Initially, Andes demanded that Harvard release all claims to damages resulting from material breaches and failure to exercise reasonable care, including the Corrosion Event, in order to reimburse Harvard for only the Lost Coil. On May 22, 2023, nearly eight months after disclosing the fact that the Lost Coil was missing, Andes provided Harvard a check for $22,976.89, which failed to cover all the losses incurred as a result of Andes's breach related to the Lost Coil.

58. Andes has also failed to reimburse Harvard for the excess storage and handling fees it charged Harvard in 2022 and 2023 caused by the Corrosion Event and the mishandling of the Harvard Steel Coils.

59. In addition to the damages caused by the Corrosion Event, mishandling of the Harvard Steel Coils, and charging additional and excessive fees incurred solely because of the Corrosion Event, Andes' subsequent refusal to provide accurate information about Harvard's Steel Coils, failure to respond to Harvard's communications, and failure to timely inspect and process Harvard Steel Coils, further added to Harvard's damages by actively hampering Harvard's efforts to evaluate and address the damage to its property.

60. As a direct result of Andes' conduct and breaches, Harvard has been unable to timely and efficiently determine the full scope of the damage to each Steel Coil, fulfill customer orders, find alternative buyers for the Damaged Coils, and transport the remaining Steel Coils from Andes's facility as intended, incurring additional costs for financing, storage, handling, processing, transportation of the Steel Coils and replacement materials, lost profits and lost business, including without limitation, damage to its business reputation with its customers.

61. Andes has acted in a manner contrary to or inconsistent with industry standards for storage, processing, and handling flat-rolled carbon steel in general and specifically as they related to the Steel Coils.

62. Andes failed to exercise care with regard to the Steel Coils that a reasonably careful person would exercise under similar circumstances and it is liable for damages for loss of or injury it caused to the Steel Coils and continues to cause to Harvard.

63. Had it exercised reasonable care for the Harvard Steel Coils, Andes could have avoided the damages incurred by Harvard and which Harvard continues to incur.

64. As a result of Andes's breaches of the Parties' Agreement, failure to abide industry standards, and failure to exercise reasonable care, Harvard is entitled to damages for the foregoing losses.

### COUNT I - BREACH OF CONTRACT AND FAILURE TO EXERCISE REASONABLE CARE WITH RESPECT TO THE DAMAGED COILS

65. Harvard incorporates the allegations stated in paragraphs 1-64 as if restated here.

66. As defined above, reflected in their course of dealing and memorialized in their Transactional Documents and the Bailee Agreement, the Parties' Agreement is a valid and binding contract under common law and the Uniform Commercial Codes of Indiana and Ohio.

67. Harvard performed all its obligations under the Agreement, paying Andes all charges for storage, processing, and handling of Harvard's Steel Coils.

68. Andes is in material breach of the Agreement, having failed to securely store, process, and/or otherwise handle Harvard's Steel Coils as promised.

69. Andes is also in material breach of the Parties' Agreement, having failed to timely inspect, communicate, disclose critical information, process, and otherwise handle Harvard's Steel Coils as agreed after events related to the Corrosion Event and Andes' admissions and promises with respect to the Damaged Coils.

70. Andes is in further material breach of the Agreement, having charged Harvard additional and excessive fees to store, process, and handle Harvard Steel Coils in 2022 and 2023 as a result of the Corrosion Event and mishandling of Harvard's Steel Coils.

71. In addition, Andes is in material breach of the Bailment Agreement with respect to the Damaged Coils.

72. As the bailee, Andes is obliged to exercise ordinary care in safeguarding the bailed property (i.e., the Steel Coils), and was obligated, but failed, to return the bailed property undamaged.

73. Harvard is entitled to the direct damages caused by Andes's breach of the Agreement, breach of the Bailment Agreement, and its unreasonable handling of the Steel Coils, including without limitation, losses arising from damaged, devalued and unmarketable Harvard Steel Coils, any excess replacement costs associated with the Damaged Coils, third-party fees for financing, inspecting, handling, processing, and transportation, additional Andes' fees for storage, handling, inspection, and processing, and lost profits and lost business, in an amount to be proved at trial, but in excess of $1.576 million.

74. Harvard is also entitled to all incidental and consequential damages foreseeably caused by Andes's breaches and unreasonable handling of the Steel Coils in an amount to be proved at trial.

### COUNT II - BREACH OF CONTRACT AND BAILMENT AGREEMENT WITH RESPECT TO THE LOST COIL

75. Harvard incorporates the allegations stated in paragraphs 1-74 as if restated here.

76. As defined above, reflected in their course of dealing and memorialized in their Transactional Documents and the Bailee Agreement, the Parties' Agreement is a valid and binding contract under common law and the Uniform Commercial Codes of Indiana and Ohio.

77. Harvard performed all its obligations under the Agreement, paying Andes all charges for storage, processing, and handling of Harvard's Steel Coils, including the Lost Coil.

78. Andes is in material breach of the Agreement, having failed to securely store, process, and/or otherwise handle Harvard's Lost Coil as promised.

79. Andes's invoices include charges for storage of the Lost Coil after Andes reportedly lost it.

80. Andes is in material breach of the Agreement, having charged additional and excess fees to store, process, and handle the Lost Coil.

81. Andes is in material breach of the Bailment Agreement with respect to the Lost Coil.

82. On information and belief, Andes used the Lost Coil to fulfill one or more of its own customers' orders, and in so doing Andes received additional benefit therefrom.

83. As the bailee, Andes is obliged to exercise ordinary care in safeguarding the bailed property (i.e., the Lost Coil), and must return the bailed property undamaged.

84. Harvard is entitled to the direct damages caused by Andes's breach of the Agreement, breach of the Bailment Agreement, and its unreasonable handling of the Lost Coil including without limitation, losses related to the Lost Coil, including lost profits anticipated on sale of the Lost Coil, and any excess replacement costs associated with the Lost Coil in an amount to be proved at trial.

85. Harvard is also entitled to all incidental and consequential damages foreseeably caused by Andes's breaches and unreasonable handling of the Lost Coil in an amount to be proved at trial.

## RELIEF REQUESTED

Considering the above allegations, Harvard respectfully asks this Court to grant it the following relief:

A. Award damages to Harvard in an amount to be proven at trial caused by Andes' breach of the Parties' Agreement, including breach of the Bailment Agreement, and Andes' unreasonable handling of the Steel Coils contrary to industry standards and the applicable provisions of the Uniform Commercial Code, including without limitation, the cost of the Damaged Steel, any excess replacement costs, lost profits, lost business, foreseeable business harm resulting from the disruption to Harvard's customer relationships, reimbursement for additional third-party fees, and reimbursement of excess fees charged by Andes with respect to the Steel Coils after the Corrosion Event.

B. Award damages to Harvard in an amount to be proven at trial for Andes' breach of the Parties' Agreement, including breach of the Bailment Agreement, and Andes' unreasonable handling of the Lost Coil contrary to industry standards and the applicable provisions of the Uniform Commercial Code, including without limitation, the cost of the Lost Coils, any excess

replacement costs, lost profits, lost business, foreseeable business harm resulting from the disruption to Harvard's customer relationships, reimbursement for additional third-party fees, and reimbursement of the excess fees charged by Andes with respect to the Lost Coil.

C.  Award Harvard pre- and post-judgment interest to extent permitted by law on all or any portion of the damages awarded to Harvard.

D.  Award Harvard its costs in this action, including to the extent permitted by law its reasonable attorneys' fees and legal costs.

Respectfully submitted,

/s/ Judy L. Woods
Judy L. Woods, 11705-49
Krieg DeVault LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
Telephone: (317) 636-4341
Email: jwoods@kdlegal.com

/s/ Alex C. Bowman
Alex C. Bowman, 33967-71
Krieg DeVault LLP
4101 Edison Lakes Parkway, Suite 100
Mishawaka, Indiana 46545
Telephone: (574) 277-1200
Email: abowman@kdlegal.com

/s/ Yelena Boxer
Yelena Boxer, Pro Hac Vice
Boxer Law LLC
2176 Halcyon Road
Cleveland, Ohio 44112
Telephone: (216) 544-6760
Email: yboxer@beneschlaw.com

*Attorneys for Plaintiff Harvard Steel Sales Ltd.*